Peter A. Camiel
Law Offices of Camiel & Chaney P.S.
520 Pike Street, Suite 2500
Seattle, WA  98101
(206) 624-1551
petercamiel@yahoo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:17-CR-00063-TMB-DMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT KARJALA'S** |
| | ) | **SENTENCING MEMORANDUM** |
| KIT LEE KARJALA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant Kit Lee Karjala, through her counsel submits this memorandum to address issues pertaining to her video sentencing hearing scheduled for September 15, 2020.

**Defense Sentencing Recommendation**

Kit Karjala has already served over fourteen months in custody at the Highland Mountain Correction Center. In addition, she has been under

Defendant Karjala's Sentencing Memorandum-1
*(USA v. Kit Lee Karjala, 3:17-cr-00063-TMB-KFM)*

conditions of home incarceration for nearly one year at her parent's Federal Way Washington residence. She is only permitted to leave the residence with advance permission for limited periods of time. Given the amount of time already served, defense counsel recommends a sentence of time served to be followed by a term of supervised release. The United States Probation Office has also recommended a sentence of time served. Ms. Karjala lacks the ability to pay a fine and therefore no fine should be imposed.

## Case Background

Kit Karjala was arrested on a criminal complaint on May 10, 2017. She was initially indicted on May 18, 2017, and a Superseding Indictment was returned on June 21, 2018. She was released on bond but after being found in violation was ordered detained on June 27, 2018. She was held at the Highland Mountain Correction Center. After litigating several search and pretrial issues, she entered a plea of guilty to the charge of Money Laundering Conspiracy on September 17, 2019. On September 20, 2019 due to medical issues she was released on bond with conditions including home incarceration. She has been under the supervision of pretrial services from the Western District of Washington who report she has complied with the conditions of her release.

Defendant Karjala's Sentencing Memorandum-2
*(USA v. Kit Lee Karjala, 3:17-cr-00063-TMB-KFM)*

## The Charge and the Plea Agreement

On September 17, 2019 Ms. Karjala entered a guilty plea pursuant to a plea agreement, Dkt. # 375 to the charge of Money Laundering Conspiracy as contained in Count 3 of the Superseding Indictment. Section C of the plea agreement sets forth the agreed factual basis for this plea:

**Plea Agreement Section C. Factual Basis**

> The defendant admits the truth of the allegations in Count 3 of the Superseding Indictment and the truth of the following statement, and the parties stipulate that the Court may rely upon this statement to support the factual basis for the guilty pleas and for the imposition of the sentence:
> Count 3
> Beginning no later than about July 7, 2016, and continuing through about May 10, 2017, there was an agreement between two or more persons, including the defendant, Christopher Lee Miller, akla "Mellow," and others, to engage in money laundering transactions involving the proceeds of the illegal distribution of controlled substances inside ACC. The defendant became a member of that conspiracy knowing that at least one of its aims was to promote the unlawful distribution of drugs inside ACC, and the defendant acted to further its purposes. Miller and others would pay for the drugs that were distributed inside ACC by having money transferred to others, including to the defendant, via electronic bank transfers effected telephonically and otherwise, and also via deposits of cash. These transactions were in and affecting interstate and foreign commerce. The money that Miller and others transferred to the defendant and other associates were proceeds derived from the distribution of controlled substances inside ACC, including Buprenorphine and Tetrahydrocannabinol (THC). The defendant, Miller, and other co-conspirators knew that the money came from the sale and distribution of controlled substances. Money was transferred to the defendant and

others to maintain a supply of controlled substances for distribution inside ACC as part of the conspiracy.

For example, on December 22, 2016, a third party transferred $2,100 from the third party's bank account to the defendant's bank account. This transaction was made at Christopher Lee Miller's direction. The $2,100 was profits from drug sales, and the defendant and Miller knew that the money was drug proceeds at the time the transaction occurred. Miller directed the $2,100 transfer to the defendant to pay the defendant to deliver a package of drugs to Miller or another co-conspirator for further distribution inside ACC. In all, the value of the drug proceeds involved in the money laundering conspiracy alleged in the Superseding Indictment was at least $23,278.

Apart from the facts included in the above agreed factual basis section there are no other agreed facts pertaining to the conduct in this case.

## Ms. Karjala's Offense Conduct

The charge and conduct herein is serious and nothing said herein is an attempt to diminish that fact or excuse the conduct. However, the context in which Ms. Karjala engaged in this conduct is important.

At the time of the offense, Ms. Karjala was in a struggling private practice where she represented many clients who could not or would not pay for her services. She was in a difficult marriage with a husband who was unemployed. She was burdened with a growing list of unpaid bills including the rent on her law office and significant medical bills. She was also struggling with a myriad of medical issues including scoliosis, Hepatitis C, nerve

Defendant Karjala's Sentencing Memorandum-4
*(USA v. Kit Lee Karjala, 3:17-cr-00063-TMB-KFM)*

damage, an ulcer, degenerative arthritis and was described in a 2017 Substance Abuse Assessment as being in poor health.

With all these issues swirling about her life she risked her law license and her freedom for a few thousand dollars. She reluctantly agreed to bring small packages of drugs into the ACC in exchange for money. Once she had made the first delivery, she felt pressured to continue. When she hesitated to deliver additional packages, she would be inundated with calls to do so. While there were never any threats made against her, she felt trapped by a situation of her own making.

### History and Characteristics of Ms. Karjala

Kit Karjala is now fifty-seven years of age. She is a very private person and does not share a lot of information about her early life experiences. Her 2017 Substance Abuse Assessment does reveal that she endured significant childhood trauma. In addition, due to her scoliosis she had to undergo major surgery and has had to endure profound back pain throughout her life that led to her being prescribed methadone. She has also admittedly suffered from depression, anxiety, and OCD.

As a young adult she got into criminal trouble of a type that suggests that at an earlier time in her life she endured trauma and victimization. Those

court matters occurred well over thirty years ago. After her early adult challenges, she obtained a BA degree at Evergreen State College in Washington, was admitted to Seattle University School of Law, graduated from law school, and passed the bar examination. She started her career with the public defender office but eventually opened her own law office.

### Health Concerns

In the fall of 2019 while she was in custody at the Highland Mountain Correction Center, Kit Karjala was diagnosed with stage 4, metastatic breast cancer. For the past year she has been receiving treatment at the Cancer Care Alliance in Seattle. Her oncologist Dr. Kalyan Banda submitted a letter summarizing her condition:

> Ms. Karjala has been diagnosed with metastatic breast cancer that has spread to her bones and liver. Her most recent PET scan on 5/8/2020 demonstrates partial response meaning that the current therapy she is on has reduced the amount of cancer seen on the scan, but there is still cancer remaining. Her disease is incurable, and she is currently receiving oral biotherapy and hormone therapy injections to control her disease. She will need to continue these medications indefinitely.[1]

---

[1] Ms. Karjala underwent another PET scan at the end of August. The results from that most recent scan show new tumor growth. An ultrasound and possibly an MRI are scheduled to further examine the new areas.

Defendant Karjala's Sentencing Memorandum-6
*(USA v. Kit Lee Karjala, 3:17-cr-00063-TMB-KFM)*

## The Federal Bureau of Prisons Is Not Equipped to Handle Ms. Karjala's Medical Issues

Even before the COVID-19 pandemic the BOP was ill equipped to provide the type of medical care Ms. Karjala continues to require for treatment of her cancer. The BOP is now struggling to contain the COVID-19 outbreak that has involved at least one-hundred of its facilities and over forty of its RRC's, sickened over ten-thousand inmates, hundreds of staff and cost the lives of at least 116 inmates. This virus is particularly deadly for people with compromised immune systems like Kit Karjala.

The BOP is now even less able to care for people with significantly compromised immune systems as it tries to ward off outbreak after outbreak at BOP facilities. Were Ms. Karjala to become infected with this virus, it is very likely she would become critically ill and at risk of death. Kit Karjala is struggling with a very aggressive type of cancer that has spread though her body. The disease has invaded her spine, lungs, and liver. She suffers intense spinal pain that restricts her mobility. The medications she receives have dramatically weakened her immune system making her vulnerable to contracting COVID-19. She requires frequent medical visits to monitor her medication, periodic scans and biopsies and regular consultations with her oncologist to monitor her progress and make treatment decisions. If she

were in BOP custody, it is unlikely she would receive the level of medical care she requires.

## The Need to Avoid Unwarranted Sentence Disparity

There are two relevant sentencings that should be used as a guide for this Court in determining the appropriate sentence in this case. In *United States v. Adam Spindler,* 3:16-cr-00089-SLG a sentence of 8 months was imposed on charges of drug conspiracy and possession with intent to distribute controlled substances. At the time of the offense, Mr. Spindler was a corrections officer at the Goose Creek Corrections Center. The government had recommended a term of 9 months. Spindler admitted that on multiple occasions over a period of months he smuggled both heroin and marijuana into the facility and provided these drugs to an inmate in exchange for money.

In *United States v. Patrick Sherman*, 3:10-cr-00067-TMB, the Court imposed a term of imprisonment of 12 months and 1 day for a drug conspiracy conviction where the government had recommended a term of 37 months. Mr. Sherman was a corrections officer at the ACC who admitted smuggling heroin, cocaine and marijuana into the facility to provide to inmates in exchange for money.

Ms. Karjala, has been convicted of essentially identical conduct as the corrections officers involving a similar abuse of trust. She has already served

Defendant Karjala's Sentencing Memorandum-8
*(USA v. Kit Lee Karjala, 3:17-cr-00063-TMB-KFM)*

significantly more time than either of the two corrections officers was required to serve. Like the corrections officers she has lost her career employment because of her conduct.

## Conclusion

At the time of the offense herein, Kit Karjala was struggling with medical issues, financial issues, and marital issues. She now finds herself with in incurable illness for which the present treatment will only buy her time but not a cure. While there must be consequences for her actions, those consequences need to be measured by a sentence that is sufficient but not greater than necessary. Kit Karjala has already lost her law license. She has spent fourteen months at Highland Mountain Correction Center. She has spent an additional year on home detention without any violations. Measured against sentences imposed on others for similar behavior, and considering her medical history, a sentence of time served followed by supervised release is both fair and reasonable and will allow Ms. Karjala's treatment to continue uninterrupted.

Dated this 8th day of September 2020.

/s/ Peter A. Camiel<br>
Peter A. Camiel WSBA 12596<br>
Attorney for Defendant Karjala

Defendant Karjala's Sentencing Memorandum-9
*(USA v. Kit Lee Karjala, 3:17-cr-00063-TMB-KFM)*

## Certificate of Service

I hereby certify that on the 8th day of September, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court of the United States District Court for the District of Alaska using the CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the district court CM/ECF system.

/*s/Peter A. Camiel*

Defendant Karjala's Sentencing Memorandum-10
*(USA v. Kit Lee Karjala, 3:17-cr-00063-TMB-KFM)*